**STATE of Missouri, Respondent,**

v.

**Alex C. JORDAN, Appellant.**

**No. ED 97597.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 9, 2012.

Motion For Rehearing And/Or Transfer
to Supreme Court Denied Nov. 20,
2012.

Application for Transfer Denied
Jan. 29, 2013.

Jennifer Ann Wideman, Assistant Attorney General, Jefferson City, MO, for respondent.

Deborah B. Wafer, Assistant Public Defender, St. Louis, MO, for appellant.

## OPINION

ANGELA T. QUIGLESS, Judge.

After a jury trial, Alex C. Jordan ("Defendant") was convicted of one count of attempted robbery in the first degree as an accomplice, in violation of Section 569.020,[1] one count of felony murder in the second degree, in violation of Section 565.021, one count of robbery in the first degree as an accomplice, in violation of Section 569.020, one count of assault in the first degree as an accomplice, in a violation of Section 565.050, and four counts of accompanying armed criminal action ("ACA"), in violation of Section 571.015.

## I. BACKGROUND

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Brooks*, 158 S.W.3d 841, 847 (Mo.App. E.D. 2005), the record reveals Defendant had previously accompanied Darel Lotts (Lotts)[2] when Lotts purchased illegal drugs from Kurt Williams ("Williams") and Jamar Starks ("Starks").[3] These transactions typically occurred in one of their automobiles. Defendant never spoke with Williams during these transactions, nor did Defendant personally purchase any drugs from Williams or Starks.

On July 23, 2008, Lotts contacted Williams to purchase illegal drugs. Williams and Starks arrived together. Both were seated in the front seat of the sedan. Defendant and Lotts arrived together in a vehicle. Lotts got into the backseat of Starks's car and took possession of the illegal drugs from Williams. At

---

1. All statutory references are to RSMo. (2000), unless otherwise indicated.

2. Darel Lotts is the co-defendant.

3. Kurt Williams and Jamar Starks are the victims.

this time, Defendant was not in Starks's car. Lotts told Williams and Starks that Defendant wanted to weigh the drugs. In prior transactions, Lotts never asked to weigh the drugs. Lotts returned the drugs to Williams and exited the car.

Defendant and Lotts returned to the car where Williams and Starks were waiting and entered the backseat. Defendant carried a book bag that contained a gun. Lotts reached inside Defendant's book bag, pulled out the gun, and pointed it at Williams and Starks. Defendant and Lotts screamed at Williams and Starks to put their hands up so they could see them. They repeated this request several times. Lotts told Williams and Starks to give it up. Williams replied they did not have anything. Feeling threatened by the gun, Williams gave Lotts the drugs. At that point, Lotts instructed Starks to drive. Starks drove until Lotts instructed him to pull over. Lotts fired a shot at the back of the driver's headrest. After the shot was fired, Williams and Starks attempted to exit the car. Lotts shot Starks once and Williams twice, then Williams fell out of the car. Both Lotts and Defendant got out of the car and ran. Lotts returned to the scene and fired a few more shots at Starks causing his death. Defendant ran down the street without ever looking back. Williams remained on the ground until Lotts left the scene, and then he ran. A police officer found Williams and called an ambulance. Williams told the officer the events of the evening. Williams received medical treatment at the hospital for approximately a month and a half.

Lotts was charged with one count of murder in the first degree and accompanying ACA. Defendant was charged with one count of felony murder in the second degree and accompanying ACA. Both Defendant and Lotts were charged with one count assault in the first degree, one count

robbery in the first degree, one count attempted robbery in the first degree, and three counts of accompanying ACA.

Defendant filed a motion to sever his trial from co-defendant Lotts claiming he would be prejudiced if the cases were tried together. The State opposed such motion. The trial court granted Defendant's motion, and Lotts was tried in a separate jury trial.

Following a trial, the jury convicted Defendant of one count of attempted robbery in the first degree, one count felony murder in the second degree, one count of robbery in the first degree, one count of assault in the first degree, and four counts of accompanying armed criminal action. This appeal follows.

## II. DISCUSSION

On appeal, Defendant argues five points. In addition to substantive arguments, Defendant argues in his first three points that his convictions for attempted robbery in the first degree, felony murder in the second degree, and robbery in the first degree, are precluded by non-mutual collateral estoppel because the same crimes were fully and fairly litigated in his co-defendant's case. In his first point, Defendant argues the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient for a reasonable jury to convict him of aiding Lotts of attempted robbery and accompanying ACA in that there was no evidence to support an attempt to rob Starks. In his second point, Defendant argues there was insufficient evidence to convict him of felony murder and accompanying ACA because there was insufficient evidence of the underlying felony element of attempted robbery and there was insufficient evidence he intended to commit felony murder. In his third point, Defendant argues there was insufficient evidence to support

accomplice liability in his robbery conviction and accompanying ACA. He further argues there was insufficient evidence that any robbery occurred because illegal drugs cannot be lawfully possessed. In his fourth point, Defendant argues there was insufficient evidence for a reasonable jury to convict him of assault and accompanying ACA in that the evidence did not show Defendant acted with the purpose of committing assault, and there is no evidence Williams suffered serious physical injury. In his fifth point, Defendant argues the jury verdict form on Count II, ACA, related to felony murder, was ambiguous and confusing for the jury, and resulted in a miscarriage of justice.

### A. Collateral Estoppel

In his first three points on appeal, Defendant argues his convictions for attempted robbery in the first degree, felony murder in the second degree, and robbery in the first degree, are precluded by non-mutual collateral estoppel because the same crimes were fully and fairly litigated in Lotts's case. We disagree.

 As Defendant did not raise this issue at trial, he asks that we review this claim for plain error. Under Rule 30.20, plain error is error which is "evident, obvious, and clear." *State v. White,* 247 S.W.3d 557, 561 (Mo.App. E.D.2007). We first determine whether a claim on its face establishes substantial grounds to believe the trial court committed error resulting in a manifest injustice or a miscarriage of justice. *Id.* If so, we exercise review "to determine whether manifest injustice or a miscarriage of justice has actually occurred." *Id.*

 Collateral estoppel is a doctrine that bars the relitigation of an issue previously adjudicated when: (1) the issue decided in the prior case was identical; (2) the prior adjudication resulted in a judg-

ment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior adjudication; and (4) the party sought to be estopped had a full and clear opportunity to litigate the issue in the prior suit. *Snyder v. State,* 288 S.W.3d 301, 303–04 (Mo.App. E.D.2009).

 Defendant relied on civil cases to argue that courts have been relaxing the same-party requirement. *See James v. Paul,* 49 S.W.3d 678, 684 (Mo. banc 2001); *Oates v. Safeco Ins. Co. of Am.,* 583 S.W.2d 713, 719 (Mo. banc 1979). We do not find this argument persuasive. In criminal cases, the doctrine of collateral estoppel is only applied when the same person is the defendant in both cases. *State v. Newton,* 925 S.W.2d 468, 473 (Mo.App. E.D.1996); *State v. Lundy,* 829 S.W.2d 54, 56–57 (Mo. App.S.D.1992). Defendant filed a motion to sever; therefore, Defendant was not a party in Lotts's case at his own request. We find this claim on its face does not establish substantial grounds to believe the trial court committed error resulting in a manifest injustice or a miscarriage of justice. Defendant's collateral estoppel argument is denied.

### B. Sufficiency of the Evidence

Additionally, Defendant argues in his first four points on appeal the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient. Defendant argues that the evidence was insufficient to show (1) he aided in attempted robbery in the first degree, (2) he committed felony murder in the second degree, (3) he aided in robbery in the first degree, (4) he aided in assault in the first degree. In reviewing a claim of insufficient evidence to support a criminal conviction, we are limited to a determination of whether there is sufficient evidence from which a reasonable jury may have found defendant guilty beyond a rea-

sonable doubt. *State v. Bateman*, 318 S.W.3d 681, 686–87 (Mo. banc 2010). We will affirm a trial court's denial of a motion for acquittal if sufficient evidence exists from which a reasonable jury may have found the defendant guilty of the charged offense. *State v. Jones*, 296 S.W.3d 506, 509 (Mo.App. E.D.2009). We accept all evidence supporting the jury's verdict and disregard all evidence and inferences to the contrary. *State v. Reed*, 334 S.W.3d 619, 623 (Mo.App. E.D.2011). Furthermore, we give circumstantial evidence the same weight as direct evidence. *State v. Brooks*, 158 S.W.3d 841, 850–51 (Mo.App. E.D.2005).

 Defendant was charged with acting as an accomplice in his convictions for attempted robbery in the first degree, robbery in the first degree, and assault in the first degree. Therefore, to convict Defendant of these charges, evidence had to prove beyond a reasonable doubt that Defendant acted in concert with Lotts in committing each crime. Section 562.041. Missouri law provides that all people who act in concert to commit a crime are equally guilty. *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000). The accomplice liability set forth in Section 562.041 comprehends a wide variety of actions intended to assist another person in criminal conduct. *Id.* It is not necessary that the defendant personally commit every element of the crime; any evidence demonstrating affirmative participation in aiding the principal to commit the crime will support a conviction. *State v. Young*, 369 S.W.3d 52, 55 (Mo.App. E.D.2012). Affirmative participation in aiding the principal includes acts that could be construed as "encouragement," for example, signs, looks, words or gestures. *Barnum*, 14 S.W.3d at 591. "In fact, associating with those [who] committed the crime before, during, or after its occurrence, acting as part of a show of

force in the commission of the crime, attempting flight from the crime scene or failing to assist the victim or seek medical help are all factors which may be considered." *Id.*

### 1. Attempted Robbery

Defendant claims there was insufficient evidence Defendant acted with Lotts to commit the crime of attempted robbery and accompanying ACA because there was no evidence of an attempt to rob Starks. We disagree.

We examine whether there was sufficient evidence from which a reasonable jury could have found Defendant aided or encouraged Lotts to attempt to rob Starks. Under Section 564.011, a person is guilty of attempt to commit an offense when (1) defendant had the purpose to commit the underlying offense, and (2) defendant performed an act which is a substantial step toward committing that offense. *State v. Withrow*, 8 S.W.3d 75, 78 (Mo. banc 1999). "A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime ... [c]auses serious physical injury to any person...." Section 569.020.

 The evidence shows that Defendant and Lotts had the purpose to commit the underlying offense of robbery. Defendant brought the loaded gun to the car. Intent to cause serious physical injury can be inferred from the use of a deadly weapon. *See State v. Stidman*, 259 S.W.3d 96, 104 (Mo.App. S.D.2008). Lotts then took a substantial step toward committing the offense when he pulled the loaded gun out of Defendant's book bag and held the victims at gunpoint. Furthermore, Defendant and Lotts took a substantial step toward committing the robbery when they repeatedly told the victims to keep their hands up. Lotts then asked the victims to give it up, and Williams replied that they

didn't have anything. There was sufficient evidence from which a reasonable jury may have found attempted robbery occurred.

█ Defendant was convicted of acting as an accomplice for attempted robbery. Defendant's acts demonstrate Defendant affirmatively participated in the attempted robbery of Starks. Defendant brought a loaded gun into the car, told the victims to keep their hands up, and did nothing to discourage or stop the attempted robbery. *See Barnum,* 14 S.W.3d at 591 (finding affirmative participation in aiding the principal includes acts that could be construed as "encouragement" which could be signs, looks, words, or gestures). We find this evidence sufficient for a jury to find beyond a reasonable doubt that Defendant affirmatively participated in attempting to rob Starks. Point one is denied.

### 2. Felony Murder

Defendant claims there was insufficient evidence for a conviction for felony murder because there was insufficient evidence of the underlying felony, and Defendant did not intend to commit felony murder. We disagree.

█ "Section 565.021.1(2) provides that a person commits the crime of second degree murder if he commits or attempts to commit any felony, and in the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony." *State v. Hayes,* 347 S.W.3d 676, 681 (Mo.App. E.D.2011). The State must prove the person died and the criminal agency of another caused the death. *Id.* These elements may be proven by circumstantial evidence. *Id.* Felony murder permits a homicide to be classified as murder even though committed unintentionally if it occurred during the pursuit of a felony. *Id.* There is no need to show

intent to kill, but only the homicide occurred in the perpetration or attempted perpetration of a felony. *Id.* The essence of the felony murder offense is the intent to commit the felony, not the intent to murder. *Id.*

█ As we have found sufficient evidence for which a reasonable jury could find the Defendant affirmatively participated in attempted robbery, the first element of felony murder is met. *See Hayes,* 347 S.W.3d at 681. Stark's death was caused by Lotts; therefore, the second element is met. Even if unintentionally committed, a reasonable jury could find Starks's death was a result of the attempted robbery. We find sufficient evidence for a jury to find beyond a reasonable doubt that Defendant committed the offense of attempted robbery, and Starks died as a result of the perpetration of such felony. Therefore, Defendant committed felony murder. Point two denied.

### 3. Robbery

Defendant claims there was insufficient evidence to find Defendant acted with Lotts to commit the crime of robbery and accompanying ACA. Defendant argues, as a threshold matter, that illegal drugs cannot support a conviction for robbery under Missouri law because stolen property must be "lawfully possessed." Additionally, Defendant argues there is no evidence that Defendant took anything from Williams. We disagree.

█ First, Defendant's argument that no robbery was committed because Williams did not lawfully possess the drugs is without merit. Forcible stealing as it relates to robbery is defined in Section 569.010(1) and Section 570.030 RSMo. (Cum.Supp.2009). "A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof,

either without his or her consent and he uses or threatens the immediate use of physical force upon another person...." Section 570.030 RSMo. (Cum.Supp.2009). Property "of another" includes a "possessory or proprietary interest" in the property. *See* Section 570.010. The essence of the offense of robbery is the taking of property of another by fear or violence, the ownership is not material and does not affect the offense. *State v. Bohlen,* 284 S.W.3d 714, 718 (Mo.App. E.D.2009). Williams had a possessory interest in the drugs he intended to sell to Lotts. Thus, under Missouri law, illegal drugs can be "forcibly stolen" to uphold a robbery conviction.

■ Next, we examine whether there was sufficient evidence from which a reasonable jury could have found Defendant aided or encouraged Lotts to commit robbery. "A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime ... [c]auses serious physical injury to any person...." Section 569.020. Defendant argues there is no evidence that Defendant took anything from Williams. However, the fact that Williams handed the drugs to Lotts does not negate Defendant's accomplice liability. Lotts held Williams at gunpoint while Defendant and Lotts repeatedly told the victims to keep their hands up. Lotts told the victims to give it up. Williams handed the drugs to Lotts because he felt threatened by the gun taken from Defendant's book bag. Lotts shot the victim with Defendant's loaded gun causing serious physical injury. There was sufficient evidence from which a reasonable jury may have found robbery occurred.

■ The fact that Williams handed the illegal drugs to Lotts and not Defendant is irrelevant to Defendant's conviction based on accomplice liability because it is not necessary that Defendant personally commit every element of robbery to be convicted of accomplice liability. *See Barnum,* 14 S.W.3d at 591. Evidence showing an affirmative participation to commit robbery will support the conviction. *Id.* Defendant's acts, which included bringing a loaded gun, screaming at victims to keep their hands up as Lotts pointed the gun, failing to stop or deter the robbery, fleeing from the scene, and failing to assist the victims or to seek medical help for the victims are actions which demonstrate Defendant encouraged and affirmatively participated in the robbery. *See Id.* at 591 We find this evidence sufficient for a jury to find beyond a reasonable doubt that Defendant affirmatively participated in robbery of Williams. Point three denied.

### 4. Assault

Defendant claims the evidence was insufficient to prove that Defendant acted with Lotts to commit the charged offense of assault because the testimony failed to establish Defendant intended to commit assault, and there was no evidence of serious physical injury to Williams. We disagree.

Defendant claims there is insufficient evidence to prove he had the culpable mental state to convict him as an accomplice for assault in the first degree. Section 565.050 provides that "[a] person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person" and if the "actor inflicts serious physical injury on the victim ... it is a class A felony." Again, Defendant was charged with acting as an accomplice in his conviction for assault; therefore, any evidence that shows affirmative participation in aiding the principal to commit assault will support the conviction. *See Young,* 369 S.W.3d at 55. Defendant embarked

upon a course of criminal conduct with Lotts; therefore, Defendant is responsible for those crimes which he could reasonably anticipate would be part of that conduct. *See State v. Liles*, 237 S.W.3d 636, 639–40 (Mo.App. S.D.2007); *State v. Agee*, 350 S.W.3d 83, 94 (Mo.App. S.D.2011).

 Here, there was sufficient evidence from which a reasonable jury could have found Lotts committed assault in that he knowingly caused serious physical injury to Williams when he shot him. Defendant affirmatively participated in the assault when he carried the loaded gun to the robbery and he yelled to the victims to put their hands up as Lotts held them at gunpoint. Defendant was present when Williams was shot, and he fled the scene without assisting Williams. These acts could reasonably be construed by a jury as affirmative participation in the assault of Williams as it is foreseeable that Lotts might cause serious physical injury to Williams with the use of the loaded gun that Defendant brought in his book bag. *See Barnum*, 14 S.W.3d at 591.

Further, there was sufficient evidence that Williams was seriously injured because Williams testified he had been shot and he spent over a month in the hospital. *See State v. Stidman*, 259 S.W.3d at 104 (intent to cause serious physical injury can be inferred from use of a deadly weapon). We find sufficient evidence for a reasonable jury to find Defendant affirmatively participated in assault of Williams. Point four denied.

### C. Jury Instruction

Defendant claimed the trial court committed plain error in entering judgment and sentence on Count II, ACA related to the felony murder, because the verdict form was ambiguous and not in proper form. We disagree.

 Defendant argues that the error on the verdict form[4] for Count II as submitted to the jury made it unclear the jury intended to convict Defendant of ACA, and therefore the verdict is a miscarriage of justice. There was no objection to the instructions given at trial; therefore, the point is not preserved for appeal. We may, however, review for plain error. Plain error is evident, obvious, and clear error. *State v. Cooper*, 336 S.W.3d 212, 216 (Mo.App. E.D.2011). For instructional error to rise to the level of plain error, the defendant must establish not mere prejudice, but the instructional error so misdirected or so failed to instruct the jury that it actually affected the jury's verdict and caused manifest injustice or miscarriage of justice. *Id.* Further, all instructions must be considered together. *Id.*

 Although the jury verdict form referenced an incorrect jury instruction number, we find this instructional error did not affect the jury's verdict. The verdict form for Count II, ACA associated with felony murder, referred the jury to Instruction number five, which was the instruction for felony murder, Count I. The verdict form should have referred the jury to Instruction number six, which was the instruction for Count II, ACA associated with the felony murder. However, even with this error, the jury was able to read the verdict form which clearly stated they were finding Defendant guilty of ACA.

Also, the instructional error on the same jury verdict form referred to Instruction

---

4. "As to Count II, we, the jury, find the defendant Alex Jordan guilty of armed criminal action as submitted in Instruction No. 5.
Note: Unless you have found the defendant guilty of murder in the second degree as submitted in Instruction No. 11, you may not complete this verdict finding the defendant guilty of armed criminal action as submitted in Instruction no. 5."

11, the instruction for attempted robbery, which in this case is the felony necessary to convict Defendant of the felony murder. Jurors are presumed to have ordinary intelligence and common sense. *Boone v. State,* 147 S.W.3d 801, 808 (Mo.App. E.D. 2004). This error was not so misdirected that it failed to instruct the jury. *See Cooper,* 336 S.W.3d at 216. The jury returned a verdict of guilty on all counts; therefore, considering all the instructions as a whole, this error did not affect the jury's verdict and cause a miscarriage of justice. *See Id.* (all instructions must be considered together). We find the trial court did not commit plain error in entering judgment and sentence on Count II, ACA related to felony murder. Point five is denied.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's decision.

ROBERT G. DOWD, JR., P.J. and ROY L. RICHTER, J., Concur.